UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD A. BRANDES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 16-cv-5285 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| ERIC MIZUNO, and | ) | |
| PATRICIA McDOUGALL, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Disappointed in the medical care he received while incarcerated, plaintiff Richard A.

Brandes ("Brandes") filed a third-amended complaint against defendants. Defendants have filed

a motion for summary judgment. For the reasons set forth below, the Court grants the motion for

summary judgment.

**I.      BACKGROUND**

The following facts are undisputed unless otherwise noted.[1]

---

[1] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces Local Rule 56.1 strictly. *See McCurry v. Kenco Logistics Services, LLC*, 942 F.3d 783, 790 (7th Cir. 2019) ("We take this opportunity to reiterate that district judges may require strict compliance with local summary-judgment rules."). Where one party supports a fact with admissible evidence and the other party fails to controvert the fact with citation to admissible evidence, the Court deems the fact undisputed. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218-19 (7th Cir. 2015); *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004). This does not, however, absolve the party putting forth the fact of the duty to support the fact with admissible evidence. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012). Citations to record evidence must be to specific pages in the record. *See Friend v. Valley View Community Unit School Dist. 365U*, 789 F.3d 707, 710-11 (7th Cir. 2015). "'Judges are not like pigs, hunting for truffles buried in' the record." *Albrechtsen v. Board of Regents of Univ. of Wisc. System*, 309 F.3d 433, 436 (7th Cir. 2002) (citation omitted). The Court does not consider

Plaintiff arrived at Lawrence Correctional Center (operated by the Illinois Department of Corrections) on January 13, 2016 and was incarcerated there for about six-and-one-half months. Lawrence Correctional Center ("Lawrence") contracts for medical services with Armor Correctional Services, Inc., which, in turn, employed defendants Eric Mizuno ("Dr. Mizuno"), who is a medical doctor, and Patricia McDougall ("McDougall"),[2] who is a nurse practitioner, to provide care at Lawrence. Plaintiff was approximately 45 years old during the relevant time period.

When he arrived at Lawrence, plaintiff did not have any problems with his feet; but, within about one month, plaintiff had noticed a small bump on his left foot. Plaintiff spoke to a nurse and submitted a medical sick call request on February 12, 2016. On February 15, 2016, plaintiff was seen by Dana Stonecipher ("Stonecipher"), a sick-call nurse. She prescribed ibuprofen, a non-steroidal anti-inflammatory drug, and referred plaintiff to the nurse practitioner, McDougall.

The next day, on February 16, 2016, plaintiff saw McDougall. McDougall prescribed anti-inflammatory drugs and recommended plaintiff rest his foot. She also ordered an x-ray, which occurred on February 19, 2016. That x-ray revealed no bone abnormalities. By March 6,

---

any facts that parties failed to include in their statements of fact, because to do so would rob the opposing party of the opportunity to show that the fact is disputed.

In this case, plaintiff responded to only the first two paragraphs of defendants' statement of facts. The remaining paragraphs are deemed undisputed to the extent they are supported by specific citations to record evidence. As for plaintiff's statement of facts, plaintiff supported only one of his fact paragraphs with a specific citation to record evidence. The rest are unsupported and, thus, not considered.

[2] McDougall was formerly known as Patricia Woziwadzki.

2016, plaintiff saw Stonecipher again at sick call.  On March 7, 2016, plaintiff was granted a low-bunk restriction due to his foot complaints.

On March 10, 2016, plaintiff saw Dr. Mizuno, who conducted a full foot exam.  Dr. Mizuno diagnosed plaintiff with plantar fibromatosis, a relatively rare condition that causes growths on the soles of feet.  Dr. Mizuno continued plaintiff's prescription for ibuprofen and added prednisone.  Dr. Mizuno prescribed medical shoes and referred plaintiff to an outside orthopedist.

Less than two weeks later, on March 22, 2016, plaintiff saw the outside orthopedist, Dr. John Elstrom ("Dr. Elstrom").  Dr. Elstrom agreed with Dr. Mizuno's diagnosis and requested medical shoes for plaintiff.

Lawrence prohibits laced shoes, because shoelaces can be used as a weapon or to harm oneself.  Thus, inmates are allowed only shoes that fasten with Velcro.  When McDougall learned that plaintiff had not been provided medical shoes, she telephoned plaintiff's housing unit to ask about his shoe size.  Plaintiff stated that his shoe size was 10.  McDougall drove to Wal-Mart and used her own money to purchase Velcro shoes, sized 10, for plaintiff.  Such purchases were not within the scope of her job, and she was not reimbursed for the expense.  At some point, plaintiff told someone the shoes were too small.

On April 22, 2016, Dr. Elstrom operated on plaintiff's left foot.  The surgical procedure Dr. Elstrom performed was a fasciotomy, which involves removing scar tissue from the affected areas of the foot.  Dr. Mizuno testified that it would be very uncommon to perform the surgery on both feet at the same time, because that would cause mobility issues and lead to muscle weakness.  Often, a patient waits six months to a year to receive surgery for plantar fibromatosis.

The day after the surgery, plaintiff saw McDougall for a post-operative check. Plaintiff requested additional pain medication, so McDougall changed his ibuprofen prescription to Tramadol, a narcotic pain reliever. Between April 23, 2016 and May 10, 2016, plaintiff was seen six times by medical staff members for wound checks. During those checks, plaintiff's dressings and bandages were changed, and his wound was checked for signs of infection. At some point, McDougall noticed a small infection, for which she prescribed antibiotics. The antibiotics cleared the infection. In addition, on or about April 28, 2016, plaintiff had a follow-up appointment with Dr. Elstrom.

Plaintiff saw Dr. Mizuno for the second and final time on May 5, 2016. Dr. Mizuno noted that plaintiff's wound had healed well, with mild tenderness and minimal erythema. Dr. Mizuno also noted minimal drainage. Plaintiff complained of cramping and tingling, so Dr. Mizuno prescribed gabapentin. Dr. Mizuno also continued plaintiff's prescription for a narcotic pain reliever. Dr. Mizuno continued plaintiff's prescription for Bactrim, an antibiotic, and added the antibiotic Augmentin.

After May 5, 2016, the nursing staff continued to look after plaintiff's wound. On May 11, 2016, plaintiff saw McDougall for wound care. McDougall noted the wound was scabbing and had no open areas or drainage. Plaintiff complained of cramping, so McDougall increased his prescription for gabapentin. She also encouraged him to become more active.

On May 19, 2016, McDougall met plaintiff unexpectedly in the common area. Plaintiff complained that he had not received Adidas shoes. McDougall reminded plaintiff that she had supplied him with Velcro shoes. Plaintiff complained of difficulty walking. McDougall asked plaintiff if he would like a prescription for bed rest. Plaintiff refused and used abusive language toward McDougall.

4

On July 26, 2016, plaintiff was transferred to Stateville Correctional Center.

Based on these allegations, plaintiff filed a two-count third-amended complaint in which he asserts that defendants Dr. Mizuno (Count I) and McDougall (Count II) were deliberately indifferent to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Defendants move for summary judgment.

## II.   STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). When considering a motion for summary judgment, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018). Summary judgment is appropriate when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III.   DISCUSSION

Plaintiff seeks relief under § 1983 for alleged violations of his Eighth Amendment rights. The Eighth Amendment to the United States Constitution provides, "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted*." U.S. Const. Amend. VIII (emphasis added). The "primary concern of the drafters was to proscribe 'torture(s)' and other 'barbar(ous)' methods of punishment." *Estelle v. Gamble*, 429 U.S. 97,

102 (1976).  Cruel and unusual punishment also includes the "unnecessary and wanton infliction

of pain."  *Estelle*, 429 U.S. at 102-3 (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).

Because an inmate "must rely on prison authorities to treat his medical needs" and because

"denial of medical care can result in pain and suffering" that serves no penological purpose, the

Supreme Court has held that "deliberate indifference to serious medical needs of prisoners

constitutes 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth

Amendment."  *Estelle*, 429 U.S. at 104.

The Supreme Court has also explained what it means to be deliberately indifferent.  An

individual "cannot be found liable under the Eighth Amendment" unless "the official knows of

and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825,

837 (1994).  The reason for requiring knowledge and disregard of excessive risk is that:

> The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it
> outlaws cruel and unusual 'punishments.'  . . .  [A]n official's failure to alleviate
> a significant risk that he should have perceived but did not, while no cause for
> commendation, cannot under our cases be condemned as the infliction of
> punishment.

*Farmer*, 511 U.S. at 837-38.  Similarly, in *Wilson v. Seiter*, the Supreme Court explained:

> If the pain inflicted is not formally meted out as *punishment* by the statute or the
> sentencing judge, some mental element must be attributed to the inflicting officer
> before it can qualify.  As Judge Posner has observed:  'The infliction of
> punishment is a deliberate act intended to chastise or deter.  This is what the word
> means today; it is what it meant in the eighteenth century . . . [I]f [a] guard
> accidentally stepped on [a] prisoner's toe and broke it, this would not be
> punishment in anything remotely like the accepted meaning of the word, whether
> we consult the usage of 1791, or 1868, or 1985.'

*Wilson v. Seiter*, 501 U.S. 294, 300 (1991) (quoting *Duckworth v. Franzen*, 780 F.2d 645, 652

(7th Cir. 1985)).  Accordingly, "an inadvertent failure to provide adequate medical care" or "[a]

medical decision not to order an X-ray, or like measures, does not represent cruel and unusual

punishment."  *Estelle*, 429 U.S. at 105 & 107.

Here, defendants have put forth undisputed evidence that they attended to plaintiff's

medical needs, and the totality of the care plaintiff was provided shows that neither defendant

was deliberately indifferent. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) ("[W]e

look at the totality of an inmate's medical care when considering whether that care evidences

deliberate indifference to serious medical needs.").

McDougall was the first of the two defendants to see plaintiff. Plaintiff was referred to

her on February 15, 2016 for a bump on his left foot, and McDougall saw plaintiff the next day.

McDougall prescribed anti-inflammatory drugs and recommended that plaintiff rest his foot.

She also ordered an x-ray, which occurred three days later and revealed no bone abnormalities.

McDougall was also involved with plaintiff's post-operative care, beginning April 23, 2016, the

day after his surgery. That day, when plaintiff complained to McDougall about pain, she

prescribed a narcotic painkiller to replace the ibuprofen plaintiff had been taking. McDougall

was one of several individuals who checked plaintiff's surgical wound after surgery. When she

noticed signs of infection, she prescribed an antibiotic, which took care of the infection. When,

on May 11, 2016, plaintiff complained of cramping, McDougall increased his prescription for

gabapentin. These undisputed facts show McDougall took care of plaintiff's medical issues as

she learned of them and was not deliberately indifferent to his serious medical needs.

Defendant Dr. Mizuno also seems to have taken good care of plaintiff's medical needs.

Plaintiff first saw Dr. Mizuno on March 10, 2016, at which point he conducted a full foot exam

and diagnosed plaintiff with plantar fibromatosis. Far from ignoring the condition, Dr. Mizuno

continued plaintiff's prescription for ibuprofen, added prednisone, prescribed medical shoes and

referred him to an outside orthopedist. Plaintiff's appointment with the orthopedist occurred less

than two weeks later, and plaintiff received surgery on his first foot a month after that, which

was relatively fast.  Plaintiff saw Dr. Mizuno for the second and final time on May 5, 2016, i.e.,

after plaintiff's surgery.  Dr. Mizuno does not appear to have ignored plaintiff's serious medical

needs at this visit either.  To the contrary, because plaintiff complained of cramping and tingling,

Dr. Mizuno prescribed gabapentin.  Dr. Mizuno also continued plaintiff's prescription for a

narcotic pain reliever and added an additional antibiotic.

In response to defendants' motion for summary judgment, plaintiff argues that defendants

were deliberately indifferent to his serious medical condition in two respects.  First, plaintiff

argues that it took nearly a month before he saw Dr. Mizuno for the first time.  Second, plaintiff

argues that he did not receive the medical shoes the doctor had prescribed.  Actionable

indifference can include "intentionally denying or delaying access to medical care or

intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-105.

The Court first considers plaintiff's argument about delayed treatment.  Plaintiff's point

is that he first complained of pain from a bump on his left foot on February 12, 2016, but he did

not see Dr. Mizuno (who diagnosed plantar fibromatosis) until March 10, 2016.  As the Seventh

Circuit has explained, "prisons have limited resources, and that fact makes some delay

inevitable." *Mitchell v. Kallas*, 895 F.3d 492, 500 (7th Cir. 2018).  Thus, for a delay to be

actionable, plaintiff must "present 'verifying medical evidence' that the delay, and not the

underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d

954, 964 (7th Cir. 2019).  In addition, "plaintiff must show the defendant's actions or inaction

caused the delay in his treatment." *Walker*, 940 F.3d at 964.

The first problem with this claim is that plaintiff has put forth no evidence that the delay,

rather than the underlying condition, caused him any harm.  In addition, plaintiff has put forth no

evidence that he was left in pain.  He was prescribed ibuprofen, and he has put forth no evidence

8

that the ibuprofen did not suffice. More importantly, plaintiff has not put forth any evidence that

suggests either defendant was responsible for the lapse of time between his initial complaint and

his appointment with Dr. Mizuno. It is undisputed that plaintiff was receiving care in the

meantime. Three days after plaintiff's initial complaint, he was seen by a sick-call nurse, who

prescribed ibuprofen and referred plaintiff to McDougall. McDougall saw plaintiff the next day.

She, too, prescribed ibuprofen and ordered an x-ray, which occurred three days later (on

February 19, 2016) and showed no bone abnormalities. Plaintiff has put forth no evidence that,

between February 19, 2016 and March 6, 2016, he was suffering pain and that either McDougall

or Dr. Mizuno knew about it. Plaintiff has put forth no evidence that either of these defendants

"had control over the circumstances that caused the delays." *Walker*, 940 F.3d at 966. When

plaintiff saw the sick-call nurse again on March 6, 2016, he received a low-bunk restriction. His

appointment with Dr. Mizuno was four days later on March 10, 2016. Plaintiff has put forth no

evidence that either McDougall or Dr. Mizuno was aware that plaintiff needed to be seen sooner

or that they caused any delay.

Second, plaintiff complains that he was not provided the medical shoes Dr. Mizuno

prescribed. Plaintiff has put forth no evidence that Dr. Mizuno was deliberately indifferent to his

need for medical shoes. To the contrary, the *first* time Dr. Mizuno saw plaintiff, he diagnosed

plaintiff with plantar fibromatosis and prescribed medical shoes. (That is not, of course, all Dr.

Mizuno did for plaintiff. Among other things, Dr. Mizuno referred plaintiff to an orthopedist,

who saw plaintiff within two weeks and performed surgery within four weeks after that.)

Prescribing the very care plaintiff wants is not deliberate indifference. The problem was not a

lack of prescription from this defendant but rather that the shoes were not actually provided to

plaintiff. Plaintiff has put forth no evidence as to who, at Lawrence, was responsible for

9

providing the shoes, but it is undisputed that the correctional facility had a policy not to allow

shoes with shoelaces.  The correctional facility is not a defendant.  Plaintiff has put forth no

evidence that Dr. Mizuno was aware of and deliberately indifferent to the fact that plaintiff did

not receive the shoes.  Plaintiff has not, for example, put forth any evidence that plaintiff told Dr.

Mizuno, when plaintiff saw him again after surgery, that he had not received the shoes.  "To

show deliberate indifference, 'a plaintiff must provide evidence that an official *actually* knew of

and disregarded a substantial risk of harm."  *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d

1027, 1033 (7th Cir. 2019).  Plaintiff has not done so with respect to Dr. Mizuno, and Dr.

Mizuno is entitled to judgment as a matter of law.

Plaintiff also seeks to hold McDougall responsible for plaintiff's not receiving medical

shoes.  Again, the record contains undisputed evidence that Lawrence, the correctional facility

where plaintiff was housed, did not allow shoes with shoelaces.  Plaintiff has put forth no

evidence that McDougall was responsible for that policy.  The record also contains evidence that,

at some point, McDougall became aware that plaintiff had not received the prescribed medical

shoes.  Although plaintiff has put forth no evidence that McDougall was the person at Lawrence

responsible for providing the shoes (or for making the decision not to provide the shoes),

McDougall was not deliberately indifferent to the problem.  To the contrary, it is undisputed that

McDougall called plaintiff's housing unit, asked plaintiff for his shoe size, drove to Wal-Mart

and purchased Velcro shoes for plaintiff with her own money.  No reasonable jury could

conclude that McDougall was deliberately indifferent to plaintiff's medical needs.  Plaintiff has

put forth no evidence that she intentionally interfered with his prescribed treatment or was

otherwise responsible for the fact that plaintiff did not receive the prescribed shoes.  *See Estelle*,

10

429 U.S. at 104-105 (noting that "intentionally interfering with the treatment once prescribed"

could be actionable). McDougall is entitled to judgment as a matter of law.

## IV.     CONCLUSION

For all of these reasons, the Court grants defendants' motion [96] for summary judgment.

Defendants are granted summary judgment on Counts I and II. Civil case terminated.


SO ORDERED.                                                ENTERED:  May 19, 2020


_____
HON. JORGE ALONSO
United States District Judge

11